IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**5TH STREET SUPERMARKET, LLC,** a
Pennsylvania Limited Liability Company,

        Plaintiff,

    v.

**UNITED STATES OF AMERICA**,

        Defendant.

**CASE NO.**

**COMPLAINT**

The Plaintiff, 5TH STREET SUPERMARKET, LLC, a Pennsylvania Limited Liability Company, by and through its undersigned counsel, hereby files this Complaint against the UNITED STATES OF AMERICA upon the grounds set forth herein, and in support thereof, states as follows:

### FACTUAL BACKGROUND

1. The Plaintiff is a retail food store in Philadelphia, Pennsylvania, named 5TH STREET SUPERMARKET, LLC, a Pennsylvania Limited Liability Company (hereinafter "5th Street"). The store is dedicated to the retail sale of primarily staple food items to the Plaintiff's customers.

2. Located in Philadelphia, Pennsylvania, 5th Street serves a community with a high percentage of households in the Supplemental Nutrition Assistance Program ("SNAP", formerly the "Food Stamp Program").

3. Accordingly, 5th Street began accepting Electronic Benefit Transfers (or "EBT") to better serve the local community and increase its appeal to SNAP customers. These SNAP customers eventually became a substantial share of the store's total clientele, responsible for a substantial portion of the store's gross revenue on EBT alone. In addition to EBT, the SNAP clientele accounts for an even larger portion of the gross revenue, as they conduct significant non-

SNAP transactions as well for ineligible items.

4. On July 2, 2025, the USDA, through the FNS, issued a Charge Letter to the Plaintiff wherein the Store was charged by the Defendant for the sale of ineligible items on SNAP. The Defendant indicated they were seeking a permanent disqualification of the Plaintiff from the program.

5. The Plaintiff denied the allegations and presented a defense against disqualification, but in a letter dated March 9, 2026, the Agency issued a permanent disqualification of the Plaintiff.

6. Accordingly, on March 9, 2026, the Plaintiff timely filed for an Administrative Review of the Department's decision to permanent disqualify them, as permitted by 7 C.F.R. §279, and presented arguments and evidence in support of their position. The Plaintiff took issue not only with the evidence that any violations of SNAP retailer policies had occurred, but also with whether or not they were neglectful or careless in their operation of the store and oversight of the employees.

7. The Administrative Review Division of the USDA responded to the Plaintiff's appeal in a letter and opinion dated May 4, 2026, which was received on May 5, 2026. The USDA's Final Agency Decision is attached as Exhibit "A." The Plaintiff's administrative appeal was denied.

8. This Judicial Appeal has been filed timely and seeks the reversal of the USDA's current decision to permanently disqualify the Plaintiff from participating as a SNAP retailer.

### JURISDICTION AND VENUE

9. The Plaintiff bring this action based upon their disqualification from eligibility to participate in the Supplemental Nutrition Assistance Program, as codified by Congress in 7 U.S.C.

§§ 2011 – 2036(c).

10.     This Court has subject matter jurisdiction over the matters raised by the Plaintiff in this case pursuant to 7 U.S.C. §2023 and 7 C.F.R. §279.7.  Furthermore, 28 U.S.C. §1331 gives this Court original jurisdiction over civil actions arising under the laws of the United States, for which the aforementioned statute and regulation qualify.

11.     Venue is appropriate in this District pursuant to 7 C.F.R.§279.7(a), 7 U.S.C. §2023(13), and 28 U.S.C. §1391(b) as this Plaintiff's business is owned and operated in Philadelphia, Philadelphia County, Pennsylvania and because the facts giving rise to the circumstances herein occurred in the United States District Court for the Eastern District of Pennsylvania.

### PARTIES

12.     The Plaintiff, 5TH STREET SUPERMARKET, LLC, a Pennsylvania Limited Liability Company, operates at 4501 N. 5th Street, Philadelphia, PA 19140-2309.  5TH STREET SUPERMARKET, LLC, a Pennsylvania Limited Liability Company, is referred to herein as "5th Street" and as "Plaintiff".

13.     The Defendant, the UNITED STATES OF AMERICA, acting through its Agency, the United States Department of Agriculture (hereinafter referred to as the "USDA" or "Department"), and its subservice, the Food and Nutrition Service (hereinafter referred to as "FNS").

### GENERAL ALLEGATIONS

14.     The Supplemental Nutrition Assistance Program (SNAP) is a government program operated pursuant to Title 7 United States Code, Chapter 51, and codified more specifically as 7 U.S.C. §§2011-2036(c).

15. The general purpose of SNAP is to provide food benefits (formerly "food stamps") to program participants who meet the financial need requirements. SNAP participants are awarded benefits (money) issued on a state-by-state basis in varying amounts based on the needs of their household. These benefits are transmitted to, and utilized by the participant through an Electronic Benefits Transfer (EBT) card, which conceptually functions similarly to a debit card.

16. The benefits are to be used by the participant only for the purchase of food and other eligible items sold by approved SNAP retailers, such as 5th Street.

17. The Defendant is only allowed to issue sanctions in accordance with 7 C.F.R. §278.6(e).

18. Not all violations of SNAP regulations warrant sanction. See 7 C.F.R. §278.6(e)(7).

### COUNT I: REQUEST FOR JUDICIAL REVIEW

19. The Plaintiff incorporates and restates each and every paragraph set forth above as though fully set forth herein.

20. The Plaintiff, pursuant to 7 U.S.C. §2023 and 7 C.F.R. §279.7, have the right to and hereby do, request a *trial de novo* judicial review of the permanent disqualification issued by the Defendant against the Plaintiff.

21. The Plaintiff did not engage in sanctionable activity which would warrant the issuance of a disqualification under the regulations.

22. The initial administrative decision, in addition to the Final Agency Decision rendered upon the Administrative Appeal, errantly found that the Plaintiff had committed SNAP regulation violations due to accepting SNAP benefits in exchange for "common ineligible non-food items."

23. The store denies that the transactions occurred as described by the Agency.

24. Furthermore, the Final Agency Decision wrongly determined that the store's ownership and/or management was careless or neglectful in its operation of the firm and oversight of the clerks.

25. The Plaintiff's management and ownership have been diligent in operating the store and overseeing employees.

26. The Plaintiff have never been afforded an opportunity to cross-examine the third-party contract investigator, nor have they been permitted to review the Administrative Record and respond to the allegations and evidence set forth therein.

27. As such, the Defendant, acting through its department and sub-departments in the USDA, improperly and impermissibly permanently suspended the Plaintiff from participation in SNAP.

28. Therefore, the permanently disqualification against the Plaintiff should be set aside by this Court in favor of the issuance of a warning letter, and the Plaintiff's status as an approved SNAP retailer should be reinstated.

**WHEREFORE**, the Plaintiff, 5TH STREET SUPERMARKET, LLC, a Pennsylvania Limited Liability Company, respectfully requests that this Honorable Court conduct a Judicial Review of the Defendant's permanent disqualification of the Plaintiff and subsequently enter Judgment against the Defendant for improperly disqualifying the Plaintiff permanently, as well as awarding the Plaintiff the attorney's fees and costs incurred in this action, and for such further relief as may warranted & appropriate.

### COUNT II: ARBITRARY AND CAPRICIOUS SANCTION

29.     The Plaintiff hereby incorporates and restates the paragraphs above as though more fully set forth herein.

30.     The Defendant has issued a series of internal policies which, in pertinent part, are designed to outline the system of punishments and sanctions for violations of the SNAP program by authorized retailers.

31.     The policies themselves draw arbitrary lines between numbers of ineligible items and transactions, which fail to take into consideration the volume of visits made by an investigator or a confidential informant.

32.     In any case, the Defendant lacked substantial evidence to indicate that the alleged violations warranted sanction under the regulations.

33.     Indeed, the Agency routinely chooses not to issue sanctions under virtually identical factual circumstances as those alleged here.

34.     As such, the transactions qualify as inadvertent in nature, and given the other evidence in the administrative record, the Defendant's internal policies required a warning letter to be issued rather than a suspension.

**WHEREFORE**, the Plaintiff, 5TH STREET SUPERMARKET, LLC, a Pennsylvania Limited Liability Company, respectfully requests that this Honorable Court set aside the Defendant's suspension of the Plaintiff from participating in the SNAP program, as well as award the Plaintiff's attorney's fees and costs incurred in this action, and for such further relief as may be warranted & appropriate.

This matter has been respectfully submitted to the Court by the undersigned attorneys and shall be served upon the Defendant in the manner prescribed by the Federal Rules of Civil

Procedure, 7 C.F.R. §279 and 7 U.S.C. §2023, as will be evidenced by the proof of service filed

with the Court hereafter.

Dated:  June 1, 2026                              Respectfully submitted,

#### *Joseph Vaccaro*
Joseph Vaccaro, Esq.
PA Attorney ID: 83366
541 E. Landis Avenue
Vineland, NJ 08360
Telephone:      (215) 527-0887
Email:  Vaccaroesq66@gmail.com

-and-

**METROPOLITAN LAW GROUP, PLLC**

*/s/ Andrew Z. Tapp*
ANDREW Z. TAPP, ESQ.
Florida Bar No.: 68002
*Pro Hac Vice*[1]
1971 W. Lumsden Road, #326
Brandon, Florida 33511-8820
Telephone:  (813) 228-0658
Facsimile:  (813) 330-3129
Email:  Andrew@Metropolitan.Law
          LaJeana@Metropolitan.Law

**COUNSEL FOR PLAINTIFF**

---

[1] To be filed.

**Exhibit A**



**United States Department of Agriculture**

Food and Nutrition Service

Retailer Policy Division

Administrative and Judicial Review Branch

1320 Braddock Place, Fifth Floor Alexandria, VA 22314

Telephone: (617) 565-6417

Fax: (844) 629-0651

robert.deegan @usda.gov

May 4, 2026

Erin Heyman, Esq.
Metropolitan Law Group, PLLC
1971 West Lumsden Road, Suite #326
Brandon, Florida 33511

> **Re:** **5th Street Supermarket LLC**
> **4501 N 5th Street**
> **Philadelphia, Pennsylvania 19140-2309**
> **Case Number:  C0284733**

Dear Counselor:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA) Food and Nutrition Service (FNS), in response to the request for administrative review sent via email on March 9, 2026.  Also included therein is a statement regarding applicable rights to a judicial review.

The USDA has decided that there is sufficient evidence to support the determination by the Office of Retailer Operations and Compliance to impose a permanent disqualification against 5th Street Supermarket LLC from participating as an authorized retailer in the Supplemental Nutrition Assistance Program.

Sincerely,



ROBERT T. DEEGAN
Administrative Review Officer

Enclosure:  Final Agency Decision

cc:  Edward Alejandro Bonilla & Lucy Josephine Bonilla, Owners

USDA is an Equal Opportunity Provider, Employer, and Lender

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative & Judicial Review Branch**

| | |
|---|---|
| **5th Street Supermarket LLC,** | |
| **Appellant,** | |
| | **Case Number:  C0284733** |
| **v.** | |
| **Office of Retailer Operations and Compliance,** | |
| **Respondent.** | |

## FINAL AGENCY DECISION

The U.S. Department of Agriculture, Food and Nutrition Service (FNS), finds that there is sufficient evidence to support the determination by the Office of Retailer Operations and Compliance to impose a permanent disqualification against 5th Street Supermarket LLC (hereinafter Appellant) from participating as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP).

## ISSUE

The issue accepted for review is whether the Office of Retailer Operations and Compliance took appropriate action, consistent with Title 7 of the Code of Federal Regulations (CFR) § 278.6(a), § 278.6(e)(5 and 6), and § 278.6(f)(1) in its administration of the SNAP when it imposed a permanent disqualification against Appellant.

## AUTHORITY

According to 7 U.S.C. § 2023 and the implementing regulations at 7 CFR § 279.1, "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

## CASE CHRONOLOGY

USDA conducted an investigation of the compliance of Appellant with federal SNAP law and regulations during the period December 21, 2024, through January 31, 2025.  The investigation determined that personnel at the Appellant firm accepted SNAP benefits in exchange for ineligible merchandise on two separate occasions.  Both transactions were deemed clearly violative and would normally warrant a six month disqualification period.  The items sold are best described in regulatory terms as common nonfood items such as paper towels and paper

1

plates.  The investigative report indicates that the violative transactions were handled by two different clerks in Exhibits A and D.  It also noted that the clerk in Exhibit E refused to allow the exchange of SNAP benefits for cash or for ineligible items.

Because the Appellant firm has been sanctioned twice previously (a six month disqualification in August 2018 and a one year disqualification in July 2022, both for allowing the exchange of SNAP benefits for ineligible items), a permanent disqualification is the specified sanction for a third violation as stated in SNAP regulations at 7 CFR § 278.6(e)(1)(ii).

As a result of evidence compiled from this investigation, the Office of Retailer Operations and Compliance informed Appellant, in a letter dated July 2, 2025, that the firm was charged with the violation of accepting SNAP benefits in exchange for ineligible items (Sections 278.2(a) and 271.2).  The charge letter further states that the violation warrants a permanent disqualification (Section 278.6(e)(1)).

Appellant, through counsel, initially responded to the charges by requesting an extension of time to respond.  The request was approved with August 11, 2025, being the new due date.  Appellant, through counsel, responded to the charges on August 11, 2025.  After giving consideration to the evidence, the Office of Retailer Operations and Compliance notified Appellant in a letter dated March 9, 2026, that it determined that violations had occurred at the firm, and that a permanent disqualification from participating as an authorized firm in SNAP would be effective 10 days from the date the letter was delivered.

By a request sent via email on March 9, 2026, Appellant, through counsel, appealed the Office of Retailer Operations and Compliance's decision and requested an administrative review of this action.  The appeal was granted and implementation of the sanction has been held in abeyance pending completion of this review.  Subsequent correspondence was also received.

## STANDARD OF REVIEW

In an appeal of an adverse action, Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed.  That means Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.

## CONTROLLING LAW

The controlling law in this matter is contained in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2021), and implemented through regulation under Title 7 CFR Section 278.  In particular, Sections 278.6(a) and (e)(5) establish the authority upon which a six month disqualification may be imposed against a retail food store or wholesale food concern.

7 CFR § 271.2 states that: Eligible foods means any food or food product intended for human consumption except alcoholic beverages, tobacco, and hot food and hot food products prepared for immediate consumption.

2

7 CFR § 278.2(a) states that: Coupons [SNAP benefits] may be accepted by an authorized retail food store only from eligible households, and only in exchange for eligible food.  Further, the citation specifies that coupons [SNAP benefits] may not be accepted in exchange for cash, in payment of interest on loans, or for any other nonfood use.

7 CFR § 278.6(a) states that: FNS may disqualify any authorized retail food store . . . if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part.  Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations.

7 CFR § 278.6(e)(5) states that: a firm is to be disqualified for six months if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management.

7 CFR § 278.6(e)(1)(ii) states that:  FNS shall take action as follows against any firm determined to have violated the Act or regulations.  For the purposes of assigning a period of disqualification, a warning letter shall not be considered to be a sanction.  A civil money penalty and a disqualification shall be considered sanctions for such purposes.  The FNS regional office [FNS] shall:

  **(1)** Disqualify a firm permanently if:

    **(i)** Personnel of the firm have trafficked as defined in § 271.2; or

    **(ii)** Violations such as, but not limited to, the sale of ineligible items occurred and the firm had twice before been sanctioned.

7 CFR § 278.6(f)(1) states that, "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices.  FNS may disqualify a store which meets the criteria for a CMP if the store had previously been assigned a sanction.  A CMP for hardship to SNAP households may not be imposed in lieu of a permanent disqualification.

7 CFR § 278.6(p) Freedom of Information Act (FOIA) requests and appeals states that, "A FOIA request or appeal for records shall not delay or prohibit FNS from making a determination regarding disqualification or penalty against a firm under paragraphs (c) and (d) of this section, or delay the effective date of a disqualification or penalty listed in paragraph (e) of this section."

## APPELLANT'S CONTENTIONS

The following may represent a summary of Appellant's contentions in this matter; however, in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced herein.

3

- This case was issued subsequent to the USDA's new rules regarding FOIA.  Specifically, the Appellant was not permitted to make FOIA requests and the abatement of this matter.
- Appellant cited demographic data for area residents including statistics on households with children or older members as well as households with disabled members and also cited the median income of SNAP participants.
- Appellant summarized the history of the store and stated that its Inventory is replenished on a rolling basis and depending upon demand.  Inventory during the beginning of the month is typically superior to inventory at the end of the month.
- This Department receives its authorization and authority pursuant to Congress' action as outlined in 7 U.S.C. §2021, with respect to the civil penalties and disqualifications issued against retailers. The implementing regulations of 7 U.S.C. §2021 are set forth in 7 C.F.R. §278.6, which states, in pertinent part, that FNS shall consider the following when making a disqualification or penalty determination: "(1) the nature and scope of the violations committed by personnel of the firm, (2) any prior action taken by FNS to warn the firm about the possibility that violations are occurring, and (3) any other evidence that shows the firm's intent to violate the regulations." 7 C.F.R. § 278.6(d).
- Appellant summarized the burden of proof requirement.
- Appellant claims that the investigator affidavits are fundamentally flawed and are "hearsay" by definition (an out of court statement made by a declarant offered to prove the truth of the matter asserted).  Hearsay may only be relied upon in administrative matters where the proponent (in this case, the Investigator or the Department) has to show that (1) the Investigator was not biased and had no interest in the result of the case; (2) that the Appellants could have obtained the information contained in the statement before the hearing and subpoenaed the investigator; (3) the information is not inconsistent on its face; and (4) the information has been recognized by the courts has [sic] inherently reliable.  See U.S. Pipe & Foundry Co. v. Webb, 595 F.2d 264, 270 (5th Cir. 1979); J.A.M. Builders, Inc. v. Herman, 233 F.3d 1350, 1354 (11th Cir. 2000).  The fact is plain on the face of the documents presented by the Department, as there is no reasonable opportunity for the Appellants to subpoena or otherwise depose the witness because the Department has redacted all of that information prior to sending the Charging Letter. This is a fundamental deprivation of Due Process rights.
- Where it appears that the violations are limited to a small number of clerks and a small number of items, any disqualification is not appropriate.  A warning letter, however, is what the courts and ARB in Primo Meat Market have indicated is the appropriate response where those alleged violations have occurred.

Appellant submitted no evidence or other rationales in support of these contentions.  However, Appellant did previously submit the FMI report on Grocery Shopping Trends 2016, a 2014 Elsevier Social Science & Medicine Report on What does SNAP benefit usage tell us about food access in low-income neighborhoods, the FNS September 2020 Report on Benefit Redemption Patterns in SNAP in FY 2017, and the 2017 Elsevier Preventive Medicine Report on Shopping pattern and food purchase differences among SNAP and non-SNAP households in the United States in support of these contentions.

4

**ANALYSIS AND FINDINGS**

It is important to clarify for the record that the purpose of this review is to either validate or to invalidate the earlier decision of the Office of Retailer Operations and Compliance and is limited to what circumstances were at the basis of the action at the time such action was made. In an appeal of an adverse action, the Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means the Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue. Assertions that the firm has not violated program rules, by themselves and without supporting evidence and rationale, do not constitute valid grounds for dismissal of the current charges of violations or for mitigating their impact. There is no provision in the SNAP regulations for waiver or reduction of an administrative penalty assessment on the basis of corrective actions implemented subsequent to investigative findings of program violations.

While store ownership may not have personally conducted the violative transactions, SNAP rules and regulations state that regardless of whom the ownership of a store may utilize to handle store business or their degree of involvement in store operations, that ownership is accountable for the proper training of staff and the monitoring and handling of all SNAP benefit transactions. The SNAP retailer application contains a certification page whereby applicants must confirm their understanding of and agreement with SNAP retailer requirements in order to complete the application/reauthorization process. Store ownership did certify its understanding and agreement to abide by program rules and regulatory provisions when it applied to become a SNAP retailer and again when it applied for SNAP reauthorization. The ownership remains liable for all violative transactions handled by store personnel, whether paid or unpaid, new, full-time, or part-time regardless of the amount of time the owner(s) is present at the subject firm. The certification is clear that store ownership understood by signing the document that violations of program rules can result in administrative actions such as fines, sanctions, withdrawal, or disqualification from the SNAP.

The FNS investigative report shows that two employees working at the Appellant firm accepted SNAP benefits for ineligible items on two separate occasions during the investigative period. The report shows that the nature and scope of the violations under review do violate SNAP regulations, and the transaction amounts cited in the report also match FNS transaction records for the dates in question. Additionally, a review of the report shows no errors or discrepancies. There is no regulatory threshold for the dollar value of the ineligible items purchased or for the timeframe in which they were purchased. The acceptance of SNAP benefits for ineligible items is a violation of SNAP rules and regulations. The ineligible items sold were obvious nonfood items and would not readily be confused with eligible edible food items. SNAP regulations explicitly state that FNS shall disqualify a store for a six month period if it is to be the first sanction for the firm, and the evidence shows that personnel of the firm have committed violations such as the sale of common nonfood items in exchange for SNAP benefits due to carelessness or poor supervision by the firm's ownership or management. The applicable regulations do not specify intent as being a required element for a six month disqualification, but they do specify that a firm will be disqualified permanently if violations such as, but not limited to, the sale of ineligible items occurred and the firm had twice before been sanctioned.

5

The transaction amounts cited in the investigative report have been matched to SNAP transactions posted by the Appellant firm on the dates in question with no disagreements and a comparison of the dates/times/amounts on the POS receipts issued by the Appellant firm to the investigator also correspond to the dates/times/amounts provided to FNS by the firm's EBT processor when it submitted the transactions to FNS for reimbursement.  Also, evidence consisting of photos of the eligible and ineligible items purchased using SNAP, photos of the POS receipts with the firm's name, and detailed donation records signed by a local charitable organization provide conclusive evidence supporting the details provided in the report.

SNAP benefits, in general, are only authorized to be used for the purchase of foods for the household to eat as well as seeds and plants which produce food for the household to eat.  The common nonfood items purchased are clearly not edible foods and are not plants or seeds, so one has to question the level of training these employees received by store ownership and/or management.  The basic concept of "if you can't eat it, you can't buy it using SNAP" is not a difficult one for employees to grasp, yet these employees allowed the purchase of ineligible items using SNAP benefits on multiple occasions.  Had an effective compliance policy and program been in effect at the firm, it is unlikely that these employees would have made such obvious mistakes.  The more likely explanation is that store ownership and/or management failed to properly train and subsequently supervise these employees.  Additionally, had store ownership and/or management been supervising these employees through occasionally monitoring them using videotape, if available, or in person, it would have readily noticed that they were allowing the sale of ineligible nonfood items in exchange for SNAP benefits.  It also would have been immediately evident to store ownership and/or management that these employees were deficient in their knowledge of SNAP rules and regulations had it periodically spot checked their knowledge and abilities by asking questions about SNAP eligible/ineligible items.  Either of these basic supervisory techniques would have provided a no cost method for store ownership and/or management to ensure that store employees were not putting the firm's SNAP license at risk.  These are clear signs of poor or no supervision by store ownership and/or management.

It is highly improbable, based on the willingness of these employees to exchange SNAP benefits for ineligible nonfood items, that the only instances of SNAP violations were those transactions identified as part of the FNS undercover investigation.  Common sense dictates that these actions more likely than not represented an ongoing series of SNAP violations at the Appellant firm.

As previously stated, store ownership is responsible for all SNAP transactions at the firm and therefore a certain minimal level of oversight and training on the part of ownership to ensure employees, especially new employees, are not violating SNAP laws or regulations is expected.  It would be unusual and irresponsible for store ownership to not have a program of ongoing supervision of employee performance and conduct by periodically monitoring store transactions, including those involving SNAP, and reviewing daily balance sheets to ensure store employees were not stealing from the firm or conducting other activities that would jeopardize the licenses and income that the firm is dependent upon.  Under SNAP regulations, the penalty for allowing the purchase of ineligible nonfood items using SNAP benefits as the result of poor supervision by ownership or management is a six month disqualification.  However, the firm has twice before been sanctioned for the sale of ineligible items so the sale of ineligible items for a third

time will result in a permanent disqualification in accordance with 7 CFR § 278.6(e)(1)(ii).  It is a matter of record that the firm previously received two disqualification sanctions for the exchange of SNAP benefits for ineligible items

Based on this discussion, the decision by the Office of Retailer Operations and Compliance to permanently disqualify the firm was the appropriate penalty and there is no valid basis for dismissing the charges or for mitigating the penalty imposed.

**Other Contentions**

Contrary to Appellant's contention, the three criteria from SNAP regulations at section 278.6(d) listed below are not bases to be met in order for a firm to be disqualified, but are those areas that FNS considers in determining the appropriate level of sanction for firms that have violated SNAP regulations.  The level of sanction could include temporary or permanent disqualification.

1) The nature and scope of the violations committed by personnel of the firm,
2) Any prior action taken by FNS to warn the firm about the possibility that violations are occurring, and
3) Any other evidence that shows the firm's intent to violate the regulations.

Regarding Appellant's contentions relating to the FOIA process, the FOIA is governed by current FOIA rules and regulations which fall outside of the purview of this administrative review and so are not addressed further.

In regard to case law cited by Appellant, considerations of relevant legal precedent through case law, or the lack thereof in relation to the present case, are beyond the scope of this review.  This review relies upon the statute and regulations governing the SNAP and evaluates whether the decision to impose a disqualification upon the Appellant was in accordance with same and sustainable by a preponderance of the evidence.  Appellant's case law references are acknowledged in this context only.

With regards to Appellant's contention that its rights to due process were violated, section 278.6(b)(1) of the SNAP regulations provides that upon charging a firm with SNAP violations, the letter informing the firm of the charges "shall inform the firm that it may respond either orally or in writing to the charges contained in the letter within 10 days of receiving the letter." This section further states that, "Any firm considered for disqualification, shall have full opportunity to submit to FNS information, explanation, or evidence concerning any instances of noncompliance before FNS makes a final administrative determination."  A review of Retailer Operations' administrative actions regarding this matter indicates full compliance with applicable SNAP regulations, policies, and procedures.  This disqualification is an administrative action and SNAP regulations provide for an administrative review of the action.  The Act and regulations provide that any firm aggrieved by an administrative review determination may seek judicial review of the determination in Federal court or a State court of record having competent jurisdiction.  In such event, trial de novo proceedings ensure the firm of a full evidentiary hearing on the agency action at issue.

7

Appellant contends that the investigative report is hearsay, and that pursuant to Section 556(d) of the Administrative Procedure Act, hearsay evidence may only be relied upon in an administrative proceeding if found to be "reliable and credible". As such, the admission of the hearsay evidence at issue herein is dependent on "(1) whether the hearsay declarant was interested or biased, (2) whether the party opposing the hearsay had access to the information containing the hearsay and could have subpoenaed the declarant, (3) whether the information is inconsistent on its face, and (4) whether courts have recognized the information as inherently reliable." Appellant referenced court case pertaining to hearsay. However, the cases cited by Appellant refer to criteria for documents submitted into evidence in lieu of witness testimony in administrative hearings. Revisions to parts 278 and 279 of the Supplemental Nutrition Assistance Program regulations eliminated administrative hearings effective September 8, 2003. Accordingly, these case citations are not relevant to this administrative review.

That the Appellant firm is located in a low income area does not provide any meaningful basis to mitigate the SNAP violations conducted by firm employee(s). There are many SNAP retailers located in high poverty areas that do not allow the exchange of SNAP benefits for ineligible items.

Regarding a warning letter, there are no requirements in existing FNS regulations that require stores suspected of trafficking or misusing SNAP benefits be provided with a written or verbal notification that violations of SNAP regulations may be occurring and the potential penalties. Warning letters are issued in those situations where the SNAP violations are of a limited nature that would not warrant a disqualification and therefore would not have been appropriate in this situation.

Regarding Primo Meat Market, a warning letter was the correct administrative review decision because the Administrative Review Officer noted that the ineligible items sold on only two of the investigative visits met FNS requirements for a transaction to be considered violative. Therefore, while a warning letter was wholly appropriate in the Primo Meat Market case, it would have been wholly inappropriate in the case under review.

Additionally, neither the departmental or the non-departmental studies offer any direct evidence pertaining to the matter under review, which is a permanent disqualification based on two previous sanctions for of the purchase of ineligible items using SNAP during undercover investigations.

Based on this discussion, the decision by the Office of Retailer Operations and Compliance to permanently disqualify the firm was the appropriate penalty and there is no valid basis for dismissing the charges or for mitigating the penalty imposed.

## CIVIL MONEY PENALTY

Appellant is not eligible for a trafficking CMP as these only apply in cases of permanent disqualifications for trafficking. The matter under review is a permanent disqualification that does not involve trafficking therefore a trafficking CMP cannot be considered under Section 278.6.

A hardship CMP as an optional penalty in lieu of a six month disqualification was considered in this case; however, retailers facing permanent disqualification or who have had a previous sanction are not eligible for a hardship CMP. The Appellant firm has two previous sanctions for selling ineligibles and is therefore ineligible for a hardship CMP.

## CONCLUSION

A review of the evidence in this case supports that the program violations at issue did occur as charged. As noted previously, the charges of violations are based on the findings of a formal USDA investigation. All transactions cited in the letter of charges were conducted by a USDA investigator and signed under penalty of perjury. A review of this documentation has yielded no indication of error or discrepancy in any of the reported findings. Rather, the investigative record is specific and accurate with regard to the dates of the violations, the specific ineligible merchandise sold in exchange for SNAP benefits, and in all other critically pertinent detail. Accordingly, the determination by the Office of Retailer Operations and Compliance to impose a permanent disqualification against the Appellant firm from participating as an authorized retailer in SNAP is sustained. Furthermore, the Office of Retailer Operations and Compliance properly determined that Appellant was not eligible for a hardship CMP according to the terms of Section 278.6(f)(1) of the SNAP regulations as the firm has had two previous sanctions for selling ineligibles and is therefore ineligible for a hardship CMP.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If Appellant desires a judicial review, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of delivery of this decision. The judicial filing deadline is stipulated by statute; FNS has no authority to grant an extension.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

ROBERT T. DEEGAN                                              May 4, 2026
ADMINISTRATIVE REVIEW OFFICER

9

## LaJeana Deane

| | |
|---|---|
| **From:** | SM.FN.SNAP-ARB <SM.fn.SNAP-ARB@usda.gov> |
| **Sent:** | Tuesday, May 5, 2026 11:06 AM |
| **To:** | Metropolitan Service |
| **Cc:** | edwardbonilla05@yahoo.com |
| **Subject:** | FAD-5thStreetSupermarketLLC-C0284733_Final Agency Decision |
| **Attachments:** | FAD-5thStreetSupermarketLLC-C0284733_SustDecNo14_05042026_rd.pdf |

**Importance:** High

Hello,

USDA has completed its administrative review of your case. Please see the attached Final Agency Decision (FAD) for full details. For our records and for potential judicial review purposes, an e-mail delivery receipt feature is being used to confirm your receipt of the FAD. If the adverse action against your store has been sustained, the 30-day clock for filing a request for a judicial review will begin on the day the FAD has been delivered to your e-mail mailbox.

Administrative and Judicial Review Branch
Retailer Policy Division
Supplemental Nutrition Assistance Program

**USDA**
**U.S. DEPARTMENT OF AGRICULTURE**
Food and Nutrition Service
1320 Braddock Place
Alexandria, VA 22314
SM.FN.SNAP-ARB@usda.gov

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.